21 P.3d 940

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Randy Scott WILLIAMS, Defendant–Appellant.**

**No. 24916.**

Court of Appeals of Idaho.

March 29, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Judge

In this appeal, Randy Scott Williams asserts that the district court abused its discretion in imposing a fixed life sentence following Williams' guilty plea to first degree murder, Idaho Code §§ 18–4001, –4003(a), with a sentencing enhancement for use of a deadly weapon, I.C. § 19–2520.

Williams' conviction stems from the killing of Damon Knosp, with whom Williams and Tyrel McKnight had engaged in illegal drug transactions. McKnight and Williams became suspicious that Knosp was a police informant after they found telephone numbers of prosecutors and judges in Knosp's daytimer.[1] Williams and McKnight told several individuals of this suspicion and said that they were going to "take care" of Knosp. On the night in question, Williams, McKnight and Knosp drove in Knosp's Ford Explorer to an isolated rural area, where an altercation began. Williams and McKnight accused Knosp of being a police informant, dragged

him from the vehicle, and forced him to disrobe because they believed Knosp was wired with a concealed microphone. After that, according to the story later told by Williams, Knosp took a golf club from the vehicle and swung it at McKnight. McKnight also seized a golf club and struck Knosp with it several times in the body and head. Williams then joined in the beating of Knosp with a golf club. At one point, while Knosp was struggling on the ground, Williams cried, "Fore" just prior to hitting Knosp in the head with the club. Moments later, as Knosp was bleeding profusely, Williams asked Knosp if he liked the taste of his own blood. Knosp attempted to stand up and run, but Williams reentered the Ford Explorer and drove over Knosp as he attempted to escape. Williams later admitted that he ran over Knosp at least three times, and abrasions on the body indicated that the vehicle's tires had been spun on Knosp's leg.

After thus beating and running over Knosp, Williams and McKnight drove away in Knosp's vehicle. They removed some compact discs and a stereo amplifier from the vehicle and then dumped the vehicle into the American Falls Reservoir. Afterwards, Williams boasted and joked to acquaintances about the incident. Knosp's body was discovered by a hunter two days later. In the same area, three broken golf club heads and a broken golf club shaft were found. Investigators also found Knosp's vehicle in the reservoir. Bits of Knosp's hair were stuck on the license plate, and blood stains were found on the muffler. An autopsy determined that Knosp had fourteen major lacerations to the head and scalp and could have died either from being beaten with the golf clubs or from having his head crushed by the Ford Explorer.

Williams and McKnight were charged with Knosp's murder. Just prior to trial, Williams and the State entered into a plea agreement whereby the State agreed not to seek the death penalty in exchange for Williams' plea of guilty to first degree murder with a sentence enhancement for use of a deadly weapon. Following a sentencing

---

1. At Williams' sentencing hearing, a law enforcement officer testified that he was unable to find any record indicating that Knosp had ever acted as an informant.

hearing in which numerous witnesses testified in aggravation and mitigation, the district court sentenced Williams to life imprisonment without possibility of parole.[2] Thereafter, Williams filed a motion under Idaho Criminal Rule 35 for reduction of the sentence, which the district court denied.

■ On appeal, Williams contends that his sentence is excessive and that the district court abused its discretion in denying Williams' Rule 35 motion. He argues that in fashioning the sentence, the district court gave inadequate consideration to Williams' remorse for the crime, his youth (twenty years old at the time of the murder), the absence of any prior record of violent crimes, and the role that Williams' mental illness and drug abuse played in the crime.

■ When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Arrasmith,* 132 Idaho 33, 47, 966 P.2d 33, 47 (Ct.App.1998); *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct. App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993). Therefore, where reasonable minds might differ as to whether the sentence is reasonable, we will not substitute our view for that of the district court. *Brown, supra; State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App. 1992).

As Williams points out, he endured a dreadful childhood in a family steeped in drug abuse, criminality and violence. His mother's numerous husbands and boyfriends physically abused Williams and drew him into criminal activity, including theft. Williams was introduced to drug use at an early age. Consistent with his upbringing, as an adult Williams used alcohol, marijuana, methamphetamine and cocaine on a daily basis, and he was under the influence of drugs at the time of Knosp's murder.

While Williams' extremely troubled childhood is a factor that bears consideration at sentencing, against it must be weighed the heinous nature of his offense and the danger that Williams presents to society. Williams did not merely participate in the murder of another human being; he inflicted a protracted beating in which the victim was terrorized and tortured, and while engaged in this activity, Williams taunted and mocked his victim. A psychologist who evaluated Williams testified that, probably as a result of.his childhood environment, he exhibits an antisocial personality disorder and reactive detachment disorder, which are exacerbated by attention deficit disorder. According to the psychologist, antisocial personality disorder is "a constellation of engrained behaviors and perceptions that constitute the basic core [of Williams'] personality." This disorder is characterized by disregard for the rights of others, criminal activity, and inability to conform to social norms. Although Williams was only twenty years old, by the time of the offense he already had been convicted of one felony and eight misdemeanors. At the time of Knosp's murder, Williams was on felony probation for burglary.

■ Contrary to Williams' argument, it is apparent that the district court did consider Williams' age, upbringing, mental health, drug addiction, and expressions of remorse, but the district court also considered the sentencing goals of deterrence, retribution, and the protection of society. The district court explained: "I think protection of society is a primary factor here in this sentence. I don't believe that we should put others at risk by your getting out of prison some day and having a bad day or having a belief that someone needs to be taken out." We can find no fault with the district court's empha-

---

**2.** McKnight also pleaded guilty to first degree murder and received a determine life sentence.

*State v. McKnight,* 135 Idaho 440, 19 P.3d 64 (App. 2000).

sis, for in sentencing, "[t]he primary consideration is, and presumptively always will be, the good order and protection of society." *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). In *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct.App. 1988), we stated that a determinate life sentence may be reasonable "if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence." The district court did not abuse its discretion in concluding that the murder of Damon Knosp was such a crime.

 Williams also challenges the district court's denial of his Rule 35 motion for the reduction of his sentence. A Rule 35 motion is committed to the discretion of the sentencing court. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987); *State v. Lopez*, 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984). On appeal, our criteria for review of the rulings on Rule 35 motions are the same as those applied in determining whether the original sentence was reasonable. *Lopez, supra.* If a sentence was not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with the motion for reduction. *State v. Hernandez*, 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991). Here, we have held that the sentence as originally imposed was not excessive. Williams' Rule 35 motion reargued the sentencing issue but presented no new evidence indicating that the sentence was excessive. Therefore, the denial of that motion was not error.

Williams' judgment of conviction and determinate life sentence, and the order denying his motion for reduction of the sentence, are affirmed.

Chief Judge SCHWARTZMAN and Judge PERRY concur.