46 P.3d 536

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Vicki A. JENSEN, Defendant–Appellant.**

**No. 27465.**

Court of Appeals of Idaho.

March 7, 2002.

Review Denied May 16, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Nancy C. Luebbert, Special Deputy Appellate Public Defender, Moscow, for appellant.

Hon. Alan G. Lance, Attorney General; Myrna A.I. Stahman, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Vicki A. Jensen appeals from her judgment of conviction and fixed life sentence imposed upon her plea of guilty to first degree murder. I.C. §§ 18–4001, –4002, and –4003. Jensen also appeals from an order of the district court denying her I.C.R. 35 motion. We affirm.

## I.

### FACTS AND PROCEDURE

In July 1999, Jensen's husband left her and moved into an apartment with the victim in this case and the victim's three-year-old daughter.[1] Jensen was distraught and became obsessed with winning her husband back. Jensen, a registered nurse, devised a plan to kill the victim by injecting her with a lethal dose of insulin. Jensen enlisted the help of her niece and her niece's ex-boyfriend to carry out the plan.

On the morning of September 9, 1999, Jensen and her accomplices entered the victim's apartment after Jensen's husband left for work. While one of her accomplices restrained the victim, Jensen injected a lethal dose of insulin into the victim's arm. To make it appear as though the victim died of a drug overdose, Jensen also injected the victim with methamphetamine and placed methamphetamine in the victim's purse.

For approximately one hour, Jensen and her accomplices watched the victim suffer from the effects of the insulin and waited for her to die. When Jensen was satisfied that the victim would not survive, Jensen and her accomplices fled the apartment, leaving the victim's young daughter alone with her dying mother.

After several months of investigation, Jensen was arrested and charged with first degree murder and conspiracy to commit first-degree murder. The state filed a notice of intent to seek the death penalty. Pursuant to a plea agreement, Jensen pled guilty to first degree murder, and the state dismissed the conspiracy charge and withdrew its notice of intent to seek the death penalty. After a hearing, at which both the state and Jensen presented evidence, Jensen was sentenced to a determinate life term in prison. Jensen subsequently filed a Rule 35 motion for reduction of her sentence, which was denied. Jensen appeals, claiming that her sentence was excessive and that the district court abused its discretion by denying her Rule 35 motion.

## II.

### STANDARD OF REVIEW

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.

---

1. The victim had five other children who did not    live with her.

App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1185 (Ct.App.1982).

## III.

## ANALYSIS

### A. Sentence Review

#### 1. Nature of the offense

■ First, we examine the nature of Jensen's offense. In this case, we are presented with the calculated and senseless murder of the mother of six young children. The record before us demonstrates that Jensen, distraught over the breakup of her marriage, cold-bloodedly devised a plan to kill the victim. The plan was to gain entrance to the victim's apartment, restrain her, and inject her with insulin and methamphetamine.[2] As a registered nurse, Jensen knew that injecting the victim with insulin when the victim did not need it would be fatal and virtually undetectable.

In order to carry out her plan, Jensen sought the help of two accomplices. Jensen provided money to her niece and instructed her to buy the methamphetamine that Jensen would ultimately inject into the victim. Jensen instructed her niece's ex-boyfriend to obtain a firearm for use in intimidating and overpowering the victim. Jensen purchased disguises so that she and her accomplices would not be recognized. On the night before the murder, Jensen's two accomplices spent the night at Jensen's home where all three rehearsed their roles in the murder several times.

The next morning, Jensen and her two accomplices drove to the victim's apartment and waited for Jensen's husband to leave for work. The three entered the victim's apartment and restrained the victim. The record reflects that the victim begged Jensen not to inject her with methamphetamine because she was allergic to it. Despite the victim's pleas for mercy, Jensen injected the victim with insulin and methamphetamine. Jensen then watched the victim suffer for almost an hour, until she was satisfied that the victim could not call for help and would die soon. Jensen could have reversed the effects of the insulin and prevented the victim's death at any time during that hour. Jensen then fled the apartment with her two accomplices and left the victim's three-year-old daughter alone to watch her mother die.

Based on the foregoing, the district court concluded that the circumstances surrounding the murder were so egregious that a determinate life sentence was necessary. The district court stated that, although the sentence imposed was necessary to properly punish Jensen and to protect society, the sentence was also necessary so that the heinous nature of Jensen's crime would not be depreciated. Upon review of the record, we conclude that Jensen has failed to show that the district court abused its discretion in that regard.

#### 2. Character of the offender

Next, we examine Jensen's character. The information contained in Jensen's pre-sentence investigation report (PSI) and in the addenda to Jensen's PSI reveals that Jensen was raised in a stable, supportive home. Jensen was a good student, achieving average and above-average grades during junior high and high school. Upon graduation from high school in 1987, Jensen married her high school boyfriend and they had a child together. In 1990, Jensen and her first husband divorced.

In 1988, Jensen enrolled in nursing school. Jensen graduated with an associate's degree in nursing in 1990 and subsequently became licensed as a registered nurse. During her

---

2. There is also evidence in the record suggesting that, prior to plotting to kill the victim by injecting her with insulin, Jensen had formulated a different plan in which she was going to kidnap the victim, take her to the desert, and beat her to death. Jensen told her brother-in-law about her intentions and he informed Jensen's parents. When Jensen's parents confronted her, Jensen denied that she had devised such a plan. After the confrontation, Jensen abandoned her death-by-beating plot.

nursing career, Jensen worked at various hospitals and care centers. Her co-workers described her as a very capable worker who was caring and dependable. One supervisor described Jensen as "very jolly and positive about her work." That supervisor also commented that Jensen exhibited good nursing intuition and was upbeat and efficient.

Jensen's family and friends described her as a fun-loving person and a devoted wife and mother. According to Jensen's family members, it was Jensen's devotion to her second husband that caused her to commit the present offense. After marrying her second husband in 1993, Jensen converted to her husband's religion and became very active in her new church. One of Jensen's church callings was as a Cub Scout den mother and church leaders described Jensen as a fun, effective, and committed den mother to the boys in the group. Jensen became so immersed in the beliefs of her new church that she centered her life on her husband, often excluding others close to her. Jensen desperately wanted to have a child with her husband but her pregnancy attempts were unsuccessful. When her husband left, Jensen was devastated. She cried uncontrollably and stopped taking care of herself physically. She became obsessed with getting her husband back. Ultimately, when Jensen discovered that her husband was living with the victim, she became enraged and plotted to murder the victim. Those who knew Jensen indicated that, although Jensen was obsessed with getting her husband back, committing the murder was uncharacteristic of her.

A neuropsychological examination performed on Jensen in anticipation of sentencing indicated that she was intellectually average. Jensen's scores on the examination reflected that she had good attention and concentration abilities. Under some circumstances, however, Jensen did not show good judgment or decision-making. Jensen showed a strong tendency to be more intuitive than analytical and logical, indicating to the examiner that in highly charged emotional situations, Jensen was apt to make poor decisions. The examiner further determined that, despite the nature of the offense Jensen committed, Jensen did not present evidence of an antisocial personality disorder.

Consistent with the assessment of the neuropsychological examination, the record reflects that Jensen engaged in threatening or intimidating behavior when confronted with certain situations. At Jensen's sentencing hearing, Jensen's husband testified of an incident that occurred approximately two years before the murder in the present case, when his first wife succeeded in increasing his monthly child support payments after his attempt to get custody of his children failed. Jensen's husband stated that Jensen became very upset and angry, threatening to kill his first wife in the same manner as the victim in this case—by injecting her with insulin. Jensen's husband further stated that Jensen brought syringes home from work to carry out her threat but that he had disposed of them in a dumpster.

In addition, Jensen's husband testified that both before and after the murder, Jensen stalked him and insisted on communicating with him in any way possible. Several months after the murder, Jensen's husband testified that Jensen came to an apartment he shared with another woman to talk to him. Afraid that the other woman may arrive home while Jensen was there, he and Jensen went for a drive. Jensen asked him if their marriage was over, and he responded that it was. Jensen threatened that if she could not have him, nobody would. The woman who was living with Jensen's husband at that time also testified at Jensen's sentencing hearing. She testified that, after the murder, Jensen called the woman on her cell phone and inquired as to the whereabouts of Jensen's husband. When the woman refused to tell her, Jensen stated that she had a right to know where her husband was and how he was doing. Jensen then related several personal facts about the woman's life that she had never shared with Jensen, such as the address and description of the woman's previous home, the name of the woman's son, how old the woman's son was, and where he went to school. The woman testified that she felt threatened by Jensen's call because she did not know how Jensen obtained her

cell phone number, and Jensen would not have known such facts about her without doing some investigation.

At sentencing, the district court found that Jensen was completely devastated by her husband's desertion. After recognizing Jensen's anguish, the district court questioned why Jensen, an intelligent person with strong family support, would use her intelligence and experience to commit such a heinous offense. Jensen's use of her nursing and medical knowledge to commit a coldly calculated murder is particularly disturbing. Despite the neuropsychological examination's assessment that Jensen was unlikely to reoffend and had potential for rehabilitation, the district court determined that the egregious nature of Jensen's crime, coupled with Jensen's conduct before and after the murder, justified a determinate life sentence. Having reviewed the record in this case, we conclude that the record supports the district court's determination and that no abuse of discretion has been shown.

### 3. Protection of public interest

■ The appellate courts of this state have noted that the seriousness of a homicide offense mandates a punishment in the form of a substantial prison sentence. *See State v. Hooper*, 119 Idaho 606, 609, 809 P.2d 467, 470 (1991); *State v. Whiteley*, 132 Idaho 678, 680, 978 P.2d 238, 240 (Ct.App.1999). A substantial sentence in this regard reflects society's condemnation of a defendant's conduct, deters other members of society from engaging in similar conduct, and protects society from future crime. *Hooper*, 119 Idaho at 609, 809 P.2d at 470. · A sentence need not serve all the sentencing goals or weigh each one equally. *State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct.App.1993). Indeed, the primary consideration in sentencing is, and presumptively always will be, the good order and. protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel*, 125 Idaho 623, 627, 873 P.2d 877, 881 (1994).

The gravity of the offense in this case, as shown by the circumstances, is sufficiently egregious to justify a severe measure of retribution and deterrence. Moreover, as the district court found, Jensen displayed a pattern of threatening and intimidating behavior, particularly toward those who became involved with her husband. Given Jensen's escalating pattern of violence, society must be protected from her.

The sentence imposed in this case is harsh. As our Supreme Court has noted, a fixed or determinate life sentence is a serious penalty, and should not be imposed lightly. *See State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997). In *State v. Eubank*, 114 Idaho 635, 759 P.2d 926 (Ct.App.1988), this Court stated:

> [A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society. Unfortunately, in making these determinations, a judge has complete information only in regard to retribution and deterrence, ... The judge must attempt to predict the defendant's future response to rehabilitative programs and the degree of risk he might pose to society if eventually released.

*Id.* at 638, 759 P.2d at 929. Having thoroughly reviewed the record on appeal, we conclude that Jensen's offense was so egregious that it demanded an exceptionally severe measure of retribution and deterrence, regardless of Jensen's potential for rehabilitation. Accordingly, we hold that the district court did not abuse its discretion in imposing a determinate life sentence in this case.

### B. Rule 35

■ Jensen also contends that the district court abused its discretion when it denied her Rule 35 motion. A motion to reduce an otherwise lawful sentence under Rule 35 is addressed to the sound discretion of the trial court. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987). Such a motion is essentially a plea for leniency, which may be granted if the sentence originally imposed was unduly severe. *State v. Lopez*, 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct. App.1984). The denial of a motion for reduc-

tion under Rule 35 will not be disturbed on appeal absent a showing that the court abused its discretion. *State v. Robertson,* 130 Idaho 287, 289, 939 P.2d 863, 865 (Ct. App.1997). The criteria for examining rulings denying the requested leniency are the same as those applied in determining whether the original sentence was unreasonable. *Lopez,* 106 Idaho at 450, 680 P.2d at 872. We have set forth the criteria for examining the original sentence above.

If the sentence is not excessive when pronounced, the defendant must show that it is excessive in view of new or additional information presented with the motion for reduction. If the defendant fails to make this showing, we cannot say that denial of the motion by the district court represents an abuse of discretion. *State v. Hernandez,* 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App.1991). Jensen's original sentence was not excessive when it was imposed and, therefore, Jensen was required to present new or additional information in support of her plea for leniency.

In support of her motion, Jensen argued that the district court gave too much weight to her husband's testimony at the sentencing hearing.[3] Jensen submitted an affidavit of her husband after her sentencing hearing, in which Jensen's husband admitted to forging her name to the couple's joint federal tax return despite knowing Jensen's whereabouts. Jensen claimed that the affidavit demonstrated that Jensen's husband lied during his testimony at her sentencing hearing and, thus, he was not a credible witness. The district court rejected Jensen's argument, concluding that it afforded relatively little weight to the testimony of Jensen's husband and instead focused on the heinous nature of Jensen's offense.

▉▉▉▉ On appeal, Jensen asserts that the district court based its factual findings for purposes of sentencing on the testimony of her husband. Because the district court

failed to recognize the extent to which it relied on her husband's testimony in its findings and conclusions, Jensen argues that the district court abused its discretion by denying her Rule 35 motion. The record reflects that Jensen's husband was questioned on cross-examination about the tax return but claimed his Fifth Amendment right to remain silent when asked if he had forged Jensen's signature. He did not testify that he did not forge Jensen's signature. Thus, Jensen's claim that her husband's affidavit demonstrated that he lied at her sentencing hearing is unpersuasive. Moreover, the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence were all matters within the province of the district court. *State v.Leach,* 135 Idaho 525, 531, 20 P.3d 709, 715 (Ct.App.2001). This Court will not substitute its view for that of the district court as to such matters. *State v. Flowers,* 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App.1998). We conclude, therefore, that Jensen has failed to show that the district court abused its discretion in denying her Rule 35 motion.

## IV.

### CONCLUSION

After considering the egregious nature of Jensen's offense, Jensen's character, and the protection of the public interest, we hold that the determinate life sentence imposed by the district court was not an abuse of discretion. We also hold that Jensen has failed to demonstrate that the district court abused its discretion by denying her Rule 35 motion. Accordingly, Jensen's fixed life sentence for first degree murder, and the order denying her Rule 35 motion, are affirmed.

Judge LANSING and Judge GUTIERREZ, concur.

---

**3.** Jensen also raised two additional grounds in support of her request for leniency—that she acted under the extreme emotional disturbance caused by the breakup of her marriage and that she had been classified as a medium security prisoner while incarcerated. The district court

rejected both of these grounds in its order denying Jensen's Rule 35 motion because it did not consider Jensen's emotional disturbance or her medium security classification to be bases for leniency. Jensen has not challenged these grounds on appeal.