**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 33969**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 40** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: July 6, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| KENNETH EUGENE THURLOW, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. John P. Luster, District Judge.

Judgment of conviction and fixed life sentence for first degree murder, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Judge Pro Tem

Kenneth Eugene Thurlow appeals from his judgment of conviction and fixed life sentence for first degree murder. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In August 2005, Thurlow and Christopher Lewers went to a junkyard armed with concealed shotguns and baseball bats. The victim, who was working on his vehicle near the junkyard's garage, was shot in the head with a shotgun at close range. Prior to the shooting, Thurlow approached a caretaker, who was working in the junkyard garage, and asked the caretaker if he had any muriatic acid. The caretaker left the garage and went to his residence on the junkyard property to look for the acid. When he was unsuccessful in locating the acid, the caretaker began to walk back to the garage to notify Thurlow. However, as he was leaving his residence, he noticed Thurlow approaching. Thurlow told the caretaker that the victim was dead

and asked for help loading the body into a nearby truck. The caretaker walked back toward the garage and observed the victim's body lying on the ground and Lewers standing nearby.

The caretaker informed Thurlow and Lewers that the truck was inoperable and, fearful for his life, fled the junkyard. After hiding out for several hours, the caretaker returned to the junkyard and called the police. During the caretaker's absence, Thurlow and Lewers stole several items from the victim's truck, left the victim's body behind, and sold the victim's possessions to an acquaintance later that night.

Thurlow was charged with first degree murder, and Lewers was charged with aiding and abetting. Thurlow was represented by one of the conflict public defenders for the county. Prior to trial, Thurlow filed a motion for appointment of co-counsel, which the district court denied. Thurlow went to trial and, at the conclusion of its case-in-chief, the state moved to amend the information to charge Thurlow in the alternative with first degree murder by aiding and abetting in the crime. The jury found Thurlow guilty of first degree murder. I.C. §§ 18-204, 18-4001, 18-4002, 18-4003(a), 18-4004.

The district court entered a judgment of conviction and imposed a fixed life sentence. The judgment of conviction contained two clauses indicating that Thurlow had waived his right to appeal during plea negotiations. The district court entered an amended judgment of conviction removing one of the erroneous waiver statements. A second amended judgment of conviction was then entered removing the other waiver clause. Thurlow appeals, arguing that the district court abused its discretion in denying his request for appointed co-counsel and in imposing an excessive sentence.

## II.

## ANALYSIS

### A.     Timeliness

Thurlow's notice of appeal was not filed within forty-two days from his original judgment of conviction. Therefore, the state argues that this Court is without jurisdiction to entertain Thurlow's appeal.

Thurlow, presumably in anticipation of the state's jurisdictional argument, filed a motion with the Idaho Supreme Court seeking an order clarifying jurisdiction. At the Supreme Court's request, the state filed an answer. The Supreme Court entered an order maintaining jurisdiction

2

of the appeal and indicating that the appeal would proceed on all issues. Therefore, we need not address the state's argument regarding the timeliness of Thurlow's notice of appeal.

**B.**     **Appointment of Co-counsel**

Thurlow argues that the district court abused its discretion by refusing to grant his request for appointed co-counsel. Specifically, Thurlow contends the district court inappropriately focused on potential interference with the county's contracts for public defenders instead of examining the need for co-counsel. Although I.C.R. 44.3(2) governs the appointment of two attorneys in a capital case, the denial of a request for appointed co-counsel in a noncapital case is an issue of first impression in Idaho.

> The Sixth Amendment does not require that more than one attorney be appointed for an indigent criminal defendant, unless the appointment of more than one attorney is necessary for the defendant to receive the effective assistance of counsel which is his or her right under that Amendment. Even in a capital case there is no blanket constitutional requirement of appointment of more than one attorney, although such a right may exist under the statutes of a particular jurisdiction. Generally, when an indigent defendant has been provided with an attorney at public expense, his or her request for additional counsel is committed to the trial court's discretion. Denial of a request for appointment of additional counsel is proper when the amount of preparation and investigation required to defend the case is not unduly burdensome. When the resources of one appointed counsel will not suffice to adequately represent a defendant, the appointment of cocounsel is proper.

21A AM. JUR. 2D *Criminal Law* § 1115 (2008) (footnotes omitted).

Other states do not recognize an absolute right to appointment of co-counsel in noncapital cases, holding that appointment of co-counsel is allowed in situations where the record demonstrates that initial counsel was not adequately representing the accused. *See People v. Lara*, 103 Cal. Rptr. 2d 201, 209 (Cal. Ct. App. 2001); *People v. Mitchell*, 8 Cal. Rptr. 319, 323 (Cal. Ct. App. 1960); *State v. Chamberlain*, 819 P.2d 673, 683-84 (N.M. 1991); *Aranda v. State*, 640 S.W.2d 766, 771 (Tex. Ct. App. 1982). Further, as mentioned above, other jurisdictions have held that an indigent defendant's request for appointment of co-counsel is left to the trial court's discretion. *See State v. Chun*, 766 P.2d 676, 677 (Haw. 1989); *State v. Sandlin*, 300 S.E.2d 893, 896-97 (N.C. Ct. App. 1983).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the

issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In this case, Thurlow argued a motion before the district court to appoint co-counsel. Thurlow was represented by an attorney with the conflicts public defender contract for the county. The attorney argued primarily that the financial reimbursement of the contract precluded her from spending all of her time on Thurlow's case and that she also needed to simultaneously represent other clients.

The district court responded to this argument by noting that it did not want to interfere with the county's contract and that this issue may be better argued before the county's commissioners. However, the district court also stated several times that there had been no showing of ineffective representation. Additionally, the district court left the matter open for further review, noting that "at some point in time this court may recognize that the representation is simply not suitable and may have to intervene." The district court reviewed the nature of the case and authorized funds for an investigator, concluding:

> I might also note that I think that it's been important for the court to extend the investigative resources in this case, which I normally don't do in any other case. And so to some extent I have already taken into account perhaps the unique and serious nature of this particular matter above and beyond other cases.

The district court addressed whether Thurlow was receiving effective assistance of counsel and concluded that he was. Thurlow has failed to show that the district court abused its discretion in denying Thurlow's request for appointed co-counsel.

C.    **Excessive Sentence**

Thurlow argues that the district court abused its discretion in imposing a fixed life sentence for first degree murder. Specifically, Thurlow asserts that his crime was not so egregious to warrant a fixed life sentence. Thurlow further contends that the district court did not properly consider other mitigating factors, including his mental health and drug addiction issues, and the lack of felony convictions in his criminal record.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion.

4

*State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Thurlow first asserts that the district court abused its discretion when it considered Thurlow's crime to be so egregious to warrant a fixed life sentence. Thurlow contends that the district court improperly considered the premeditated nature of the crime to be enough, in and of itself, to impose a fixed life sentence for first degree murder.

Imposing a life sentence requires a high degree of certainty that the defendant cannot be released safely back into society or that the nature of the offense requires the defendant to spend the rest of his or her life in prison. *State v. Stevens*, 146 Idaho 139, 149, 191 P.3d 217, 227 (2008). The Idaho Supreme Court recently addressed a sentencing court's ability to consider the nature of the offense when imposing a fixed life sentence in *State v. Windom*, ____ Idaho ____, ____ P.3d ____ (2011). There, the Court, relying on previous decisions of this Court and the Idaho Supreme Court, reiterated that a sentencing court may consider the heinous and cruel nature of the crime when determining whether a defendant should spend the rest of his or her life in prison. *Windom*, ____ Idaho at ____, ____ P.3d at ____. *See also State v. Cannady*, 137 Idaho 67, 73 44 P.3d 1122, 1128 (2002); *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997). The *Windom* Court went on to hold that the sentencing considerations of societal retribution and general deterrence are decided based upon the unique characteristics of the offense. *Windom*, ____ Idaho at ____, ____ P.3d at ____.

Given the calculated and cruel method in which the victim was killed, the district court determined that Thurlow's crime of first degree murder mandated life in prison, stating:

5

The act is punishable to the degree that it is because of the calculated and premeditated nature of the act. And that, I think, is what's particularly disturbing in this case. . . .

. . . . The other thing that is of significant concern here is that this is a premeditated crime. This is a crime that involved planning, intention, deliberation and a purposeful act to take away a human life. . . .

. . . .

In this case the evidence seems to be pretty clear that you and Mr. Lewers had gone to the garage where [the victim] was located, you had shotguns that were concealed on your person underneath your long coats, or long shirts, whatever the case may be, and there was an apparent effort to distract one possible witness [who] was on the lot, and within a very short period of time [the victim] was shot to death, and then coldly and calculatedly his personal belongings were collected up. And you folks went right back to the den of methamphetamine use that you had left prior to this incident and casually bartered for some of this property that belonged to [the victim].

Thurlow asserts that the district court considered only the premeditated nature of the crime when fashioning the fixed life sentence. It is undisputed that Thurlow went to the junkyard with Lewers armed with a baseball bat and a concealed shotgun, stole the victim's belongings after the murder, concealed evidence of the crime, lied to police, and failed to provide any explanation for why the murder occurred. At sentencing, the district court noted not only the calculated nature of the crime, but also the theft and later casual bartering of the victim's belongings, and the striking lack of motive for the "senseless" murder.

Thurlow denied culpability in his participation in the crime, which demonstrated little potential for rehabilitation. Based on his decision to appeal his conviction, forty-five-year-old Thurlow declined to discuss his participation in the murder and exhibited no remorse for the victim's death in the presentence investigation report. While Thurlow later expressed remorse for the victim's death during the sentencing hearing, he also remarked that only the Lord knows what happened on the night of the murder and that he would not "go over what happened" during his allocution. On appeal, he continues to deny his culpability, arguing that testimony at trial "suggests" that he prevented the murder of the caretaker and that the evidence suggests that "he most likely did not pull the trigger." However, the evidence Thurlow refers to is primarily his own testimony, which the district court found to be inconsistent with the evidence presented at trial. Thurlow is incorrect that the district court considered only the premeditated nature of the crime as the reason for the imposition of the fixed life sentence. The district court also

6

considered the lack of motive for the murder, the callous nature of the crime, and Thurlow's potential for rehabilitation.

Finally, Thurlow also argues that the district court did not properly take into account other mitigating factors, including his mental health and drug addiction issues, and his lack of violent or felony criminal convictions. As our Supreme Court stated in *Windom*:

> Sentencing is less a science than an art. Judges face a different uncertainty principle than physicists: they must make a factual finding of the probability of future criminal behavior based upon limited data. In so doing, they draw upon their accumulated experience. It is precisely because of the difficulty of fashioning an objectively appropriate sentence that this Court has adopted a deferential standard of review of sentencing decisions. . . .
> . . . .
> . . . . Our standard of review does not require (nor indeed, does it permit) us to conduct our own evaluation of the weight to be given each of the sentencing considerations (societal protection, general and specific deterrence, defendant's prospects for rehabilitation and societal retribution) in order to determine whether we agree with the district court's conclusion. . . .
> In short, our task is not to determine whether we agree with the sentence imposed; rather, our duty is to determine whether Windom has demonstrated that the district court's imposition of sentence constituted an abuse of discretion under the well-established standards of review governing such decisions.

*Windom*, ____ Idaho at ____, ____ P.3d at ____.

In this case, the district court recognized its discretion in sentencing Thurlow and noted that he sought the minimum sentence while the state sought the maximum. The district court articulated the goals of sentencing and indicated that the protection of society was of primary importance. The district court considered the egregious nature of the crime; acknowledged Thurlow's mental health issues, drug addiction, and lack of a criminal record; applied the correct legal standard; and arrived at the fixed life sentence through an exercise of reason. Thurlow requests that this Court reweigh the evidence presented before the district court and arrive at a different conclusion. However, as mentioned above, to do so would be contrary to our established standards of review. Thus, Thurlow has not demonstrated that the district court abused its discretion in sentencing him to a fixed life sentence for first degree murder.

## III.

## CONCLUSION

The Idaho Supreme Court determined that Thurlow's appeal was timely and should be addressed on the merits. The district court did not abuse its discretion in denying Thurlow's

7

request for appointed co-counsel nor did it abuse its discretion in sentencing Thurlow to a fixed life sentence for first degree murder. Accordingly, Thurlow's judgment of conviction and sentence are affirmed.

Chief Judge GRATTON, **CONCURS.**

Judge GUTIERREZ, **CONCURRING IN PART AND DISSENTING IN PART**

I concur in sections II(A) and II(B) and respectfully dissent in section II(C) of the majority opinion based on the Idaho Supreme Court's recent decision in *State v. Windom*, ____ Idaho ____, ____ P.3d ____ (2011).

As the majority notes in *Windom*, the Idaho Supreme Court held that a sentencing court may impose a determinate life sentence based solely upon the nature and gravity of the offense. *Id*. at ____, ____ P.3d at ____. The Court further held that a defendant's potential for rehabilitation may also be considered, but reiterated that the primary concern for a sentencing court is the protection of society. *Id*. at ____, ____ P.3d at ____; *see also State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). In *Windom*, the defendant severely beat his mother with a homemade club and then viciously stabbed her to death. The Supreme Court found no error in the imposition of the life sentence in that case based on the severe brutality and heinous nature of the crime. *Windom*, ____ Idaho at ____, ____ P.3d at ____.

Our appellate courts have decided similar cases where determinate life sentences were affirmed based upon the heinous nature of the crimes committed. For instance, in *State v. Stevens*, 146 Idaho 139, 191 P.3d 217 (2008), the Idaho Supreme Court affirmed a fixed life sentence for the first degree murder of an eleven-month-old baby. In formulating the sentence, the sentencing court noted the brutal nature of the attack on a helpless, defenseless child. The Idaho Supreme Court affirmed the sentence, concluding that the injuries suffered by the child were "extreme" and that the amount of force required to cause the child's death was "amazing." *Id*. at 149, 191 P.3d at 227. The Supreme Court concluded that, even if the sentencing court had remained silent as to its reasons for imposing the fixed life sentence, the record alone would have supported the sentence. *Id*.

Similarly, in *State v. Jensen*, 137 Idaho 240, 46 P.3d 541 (Ct. App. 2002), the defendant was also convicted of first degree murder and given a fixed life sentence. We described the facts of that case as follows:

The next morning, Jensen and her two accomplices drove to the victim's apartment and waited for Jensen's husband to leave for work. The three entered the victim's apartment and restrained the victim. The record reflects that the victim begged Jensen not to inject her with methamphetamine because she was allergic to it. Despite the victim's pleas for mercy, Jensen injected the victim with insulin and methamphetamine. Jensen then watched the victim suffer for almost an hour, until she was satisfied that the victim could not call for help and would die soon. Jensen could have reversed the effects of the insulin and prevented the victim's death at any time during that hour. Jensen then fled the apartment with her two accomplices and left the victim's three-year-old daughter alone to watch her mother die.

*Jensen*, 137 Idaho at 243, 46 P.3d at 539. Based on those facts, the sentencing court determined that the circumstances surrounding the murder were so heinous that a fixed life sentence was necessary. This Court affirmed, concluding that Jensen's offense was so egregious that it demanded the "exceptionally severe measure of retribution and deterrence." *Id*. at 245, 46 P.3d at 541.

Finally, in *State v. Williams*, 135 Idaho 618, 21 P.3d 940 (2001), this Court upheld a determinate life sentence for a defendant who brutally murdered a person he suspected was a police informant. Williams beat the victim repeatedly with a golf club, at one point shouting "Fore" just prior to hitting the victim in the head. In addition, when the victim attempted to escape, Williams ran the victim over in the victim's car at least three times. Evidence at trial revealed that the vehicle's tires had been spun on the victim's leg. Citing retribution and protection of society, the sentencing court imposed a fixed life sentence. This Court affirmed, holding that that the egregious nature of the crime rendered such a sentence reasonable. *Id*. at 621, 21 P.3d at 943.

In this case, the district court relied heavily upon the premeditated nature of the crime when imposing the determinate life sentence:

In the end analysis, Mr. Thurlow, while it is not normally my position to agree to this extent, I think this particular case, *given the deliberate and premeditated nature of this case*, I think it does mandate and demand that the court impose the most significant sentence that this court is able to impose under the law. And it's for that reason that I think that the appropriate disposition and appropriate consequence to serve purposes mainly as retribution in this case, and also protection of society, is to simply make sure that you are incarcerated for the rest of your life without the opportunity for parole.

(Emphasis added.) However, the deliberate or premeditated nature of a crime is distinguishable from the brutality and heinous nature of the act as considered by the sentencing courts in *Windom*, *Stevens*, *Jensen*, and *Williams*. The district court in this case made no mention of the crime's egregiousness or particularly heinous nature, relying primarily on Thurlow's planning of the crime in advance. Therefore, based upon the standard articulated in *Windom* and the application of such a standard in our previous case law, I would vacate Thurlow's determinate life sentence and remand to the district court for resentencing.