IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38817

| STATE OF IDAHO, | ) | 2012 Opinion No. 66 |
|---|---|---|
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 11, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ALBERT A. CICCONE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Michael Wetherell; Hon. Richard D. Greenwood, District Judges.

Judgment of conviction and determinate life sentence for first degree murder and concurrent fifteen-year determinate term for second degree murder, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori. A. Fleming argued.

PERRY, Judge Pro Tem

Albert A. Ciccone appeals from the judgment of conviction and sentence entered upon the jury verdict finding him guilty of one count of first degree murder and one count of second degree murder. Ciccone presents three issues on appeal: (1) whether his constitutional and statutory rights to a speedy trial were violated; (2) whether the prosecutor engaged in misconduct during his rebuttal closing arguments; and (3) whether his determinate life sentence is excessive.

## I.

## BACKGROUND

On October 16, 2003, Ciccone struck his pregnant wife with his car, killing her and the unborn fetus. Ciccone was charged with two counts of first degree murder--one count for his wife and one count for the unborn fetus. On January 27, 2004, the district court entered an order holding defendant to answer, and on the same day, the State filed its information.

Trial was initially set for July 2004; however, a week before trial the State filed a motion to continue. The State's motion asserted that several witnesses were military personnel assigned to temporary duty (TDY) outside the state and were unavailable for trial. Ciccone opposed the motion, arguing that the prosecutor negligently waited for the Air Force investigation to conclude before attempting to contact witnesses. The district court granted the motion to continue and the trial was delayed until January 4, 2005. The jury ultimately found Ciccone guilty of first degree murder of his wife and second degree murder of the unborn fetus. The district court entered judgment on the jury's verdict and imposed a determinate life sentence upon Ciccone's conviction for first degree murder and a concurrent determinate fifteen-year sentence upon his conviction for second degree murder. Ciccone appealed and after the case was briefed and argued before this Court and the Idaho Supreme Court, his appeal was dismissed because it was not timely. *See State v. Ciccone*, 150 Idaho 305, 246 P.3d 958 (2010). Pursuant to a stipulation and order entered in post-conviction proceedings, the district court vacated its original judgment and conviction and reentered it as of April 19, 2011. Ciccone timely appeals from that judgment of conviction.

## II.

## ANALYSIS

### A.     Right to a Speedy Trial

Ciccone argues on appeal that his constitutional and statutory rights to a speedy trial were violated when the district court allowed him "to be tried almost fifteen months after his arrest and almost a full year after the filing of the Information . . . ." Whether there was an infringement of a defendant's right to a speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.*

In Idaho, criminal defendants enjoy both constitutional and statutory entitlements to a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution. These constitutional protections are supplemented by Idaho Code § 19-3501, which sets specific time limits within which a criminal defendant must be brought to trial. Idaho Code § 19-3501 provides as follows:

The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

. . . .

(2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the information is filed with the court.

I.C. § 19-3501(2). Under this statute, the State bears the burden to demonstrate good cause for a failure to bring a defendant to trial within the six-month limit. *Clark*, 135 Idaho at 258, 16 P.3d at 934; *State v. Livas*, 147 Idaho 547, 549, 211 P.3d 792, 794 (Ct. App. 2009).

In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court addressed application of the speedy trial right guaranteed by the Sixth Amendment and chose a flexible approach for assessing whether a speedy trial has been unconstitutionally denied. The Court adopted a balancing test in which the conduct of the defendant and the prosecution are to be considered, and the Court identified four primary factors to be weighed in determining whether a particular defendant has been deprived of his Sixth Amendment speedy trial right: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) the prejudice to the defendant. *See Barker*, 407 U.S. at 530. This same balancing test was adopted by the Idaho Supreme Court for determining whether the speedy trial guarantee of the Idaho Constitution has been violated. *See State v. Lindsay*, 96 Idaho 474, 476, 531 P.2d 236, 238 (1975).

In *Clark*, the Idaho Supreme Court reexamined "what 'good cause' means in the context of I.C. § 19-3501." *Clark*, 135 Idaho at 259, 16 P.3d at 935. The Court thereupon abandoned the previous approach of wholesale incorporation of the *Barker* balancing test when enforcing the speedy trial rights conferred by I.C. § 19-3501. The Court stated that to evaluate the justification for bringing a defendant to trial after the statutory six-month time limit,

[W]e believe that a thorough analysis of the reasons for the delay represents the soundest method for determining what constitutes good cause. We therefore conclude that good cause means that there is a substantial reason that rises to the level of a legal excuse for the delay. *See State v. Johnson*, 119 Idaho 56, 58, 803 P.2d 557, 559 (Ct. App. 1990); *State v. Stuart*, 113 Idaho 494, 496, 745 P.2d 1115, 1117 (Ct. App. 1987). Because there is not a fixed rule for determining good cause for the delay of a trial, the matter is initially left to the discretion of the trial court. *See Johnson*, 119 Idaho at 58, 803 P.2d at 559; *Naccarato*, 126 Idaho at 13, 878 P.2d at 187; *see also People v. Johnson*, 26 Cal. 3d 557, 162 Cal. Rptr. 431, 606 P.2d 738, 746 (1980); *Gallimore v. State*, 944 P.2d 939, 943 (Okla. Crim. App. 1997).

But as the Iowa Supreme Court noted in *State v. Petersen*, the reason for the delay "cannot be evaluated entirely in a vacuum." 288 N.W.2d 332, 335 (Iowa 1980). The good cause determination may take into account the factors listed in *Barker*. The *Barker* factors, however, "considered only as surrounding circumstances . . . are important, if at all, only insofar as they bear on the sufficiency of the reason itself. The shortness of the period, the failure of the defendant to demand a speedy trial, and the absence of prejudice are legitimate considerations only insofar as they affect the strength of the reason for delay. This means that, to whatever extent the delay has been a short one, or the defendant has not demanded a speedy trial, or is not prejudiced, a weaker reason will constitute good cause. On the other hand, if the delay has been a long one, or if the defendant has demanded a speedy trial, or is prejudiced, a stronger reason is necessary to constitute good cause." *Id.*

*Clark*, 135 Idaho at 260, 16 P.3d at 936.

This Court recently commented in *State v. Jacobson*, 153 Idaho 377, 283 P.3d 124 (Ct. App. 2012) that:

Our Supreme Court's non-application of the *Barker* factors, other than the reason for the delay, in *Clark* and *Young* is significant. We take this to mean that where the reason for the delay is well defined, and that reason on its face clearly does, or clearly does not, constitute good cause, there is no occasion to consider the other *Barker* factors in assessing a claimed violation of Idaho Code § 19-3501. This comports with the Supreme Court's statement in *Clark* that "if the reason for the delay is sufficient the other [*Barker* ] factors are not needed. If the reason for the delay is insufficient the other factors will not avail to avoid dismissal." *Clark*, 135 Idaho at 260, 16 P.3d at 936 (quoting *State v. Nelson*, 600 N.W.2d 598, 601 (Iowa 1999)). We conclude that resort to the other *Barker* factors will be appropriate primarily in close cases as where, for example, there are multiple reasons for the delay attributable to both the State and the defendant or the sufficiency of the reason to constitute "good cause" is genuinely subject to disagreement.

*Id.* at 380, 283 P.3d at 127.

### 1. Reason for the delay

In evaluating the reason for the delay, different weights are assigned to different reasons. *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005). Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. *Doggett v. United States*, 505 U.S. 647, 656 (1992); *Davis*, 141 Idaho at 837, 118 P.3d at 169. We attach great weight to considerations such as the State's need for time to collect witnesses, oppose pretrial motions, or locate the defendant in the event that he or she goes into hiding. *Doggett*, 505 U.S. at 656; *Davis*, 141 Idaho at 837, 118

4

P.3d at 169. A valid reason, such as a missing witness, should serve to justify appropriate delay. *Barker*, 407 U.S. at 531. However, there is an enormous difference between being inconvenienced and being unavailable. *Clark*, 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169. True unavailability suggests an unqualified inability to attend, while inconvenience merely implies that attendance at trial would be burdensome. *Clark*, 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169.

A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. *Barker*, 407 U.S. at 531; *Davis*, 141 Idaho at 837, 118 P.3d at 169. A more neutral reason, such as negligence or overcrowded courts, should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the State rather than with the defendant. *Barker*, 407 U.S. at 531; *Davis*, 141 Idaho at 837, 118 P.3d at 169; *State v. Wavrick*, 123 Idaho 83, 89, 844 P.2d 712, 718 (Ct. App. 1992). While not compelling relief in every case where a bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him or her. *Doggett*, 505 U.S. at 657; *Davis*, 141 Idaho at 837-38, 118 P.3d at 169-70. Although negligence is weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution. *Doggett*, 505 U.S. at 657; *Davis*, 141 Idaho at 837-38, 118 P.3d at 169-70.

In its oral ruling granting the State's motion to continue, the district court identified what it believed to be the causes of the delay:

> However, the court in reviewing the affidavits and statements of the State and with considering those matters which I must consider with regard to the granting of any continuance in this particular case the length of the delay would have to be until December. That is the first available date when two weeks would be available on the court's calendar. Pardon me, January, when two weeks would be available on the court's calendar, which the parties are advising me is the amount of time that they feel would be taken.
>
> The court had in fact advised both parties at the time that trial was set in this matter that it would not be able to be here the first week of August. As a result of that, other commitments have been made with the court's time. While a congested calendar is not enough for a continuance, the fact that other calendar items have been scheduled because of the fact that the parties felt the matter could be completed by July 30th and now do not feel that that is the case, I think is a little bit different matter.

And the court feels that continuing a matter and having half your trial in July and the other half in August creates other problems that could potentially prejudice the defendant, as well.

The reason for the request the court feels is in fact reasonable. The court notes that a jury trial for a murder case in Elmore County has not gone to trial for nearly twenty years. Somehow I seem to have had the luck of getting two of them in my first year and a half on the bench.

And it appears that the prosecution in this case did make efforts to be in touch with the Air Force with regard to these witnesses; that according to the affidavit the Information with regard to the witnesses was not provided until June; that the prosecution was not advised that some of those witnesses were out of the country, out of reach of the subpoena power of this court until July a few days prior to trial.

Certainly hindsight is always 20-20. And the fact of the matter is that we must recognize that this is a military community and military do in fact have their own procedures and the United States is at the current time in a state of war in two countries. And that military personnel are being switched around, moved for training on a regular basis, which creates a problem for the prosecution. Probably even greater than those that are presented when the United States is not in that situation.

Prosecution's representation is that it did not know that these witnesses would not be available until July. Intent is a key element in a first degree murder trial and certain of these witnesses directly relate to the issue of intent. Not only is the defendant required to--is entitled to a fair and speedy trial, but the people as well are entitled to a fair and speedy trial. And it would be extremely--an extreme hardship on the State to attempt to obtain these people on such short notice. It is possible they could not be obtained at all.

Finally, is there prejudice to the defendant? The court will note that yes there is in fact prejudice to the defendant any time, in the court's opinion, when there is a delay.

However, given the facts of this case, the court does not believe that this is an unreasonable delay, nor does it present an unreasonable prejudice to the defendant and will note that the State has cooperated in the taking of depositions voluntarily where the defendant discovered that one of the witnesses was going to be on temporary duty, as well.

So, is there prejudice? Yes, there is some prejudice. Is that prejudice unreasonable given the circumstances? No. The court finds that it is not. And has the defendant demanded his rights? The defendant has in fact demanded and asserted his rights to speedy trial. However, the court will note that under the laws of this state and under the United States Supreme Court decision, the right to a trial within a specified period of time is not absolute. The court does have discretion to grant a continuance for reasonable cause shown. The court does believe that reasonable cause has been shown in this matter.

. . . .

So, the court, despite its concerns over the continuance and the inconvenience that is going to occur, will for all of those reasons grant the

6

continuance requested. The court will reset this matter for trial for a period of two weeks to commence January 4th of 2005.

As noted above, a valid reason, such as a missing witness, should serve to justify appropriate delay. *Barker*, 407 U.S. at 531. Moreover, in *Doggett* the United States Supreme Court stated: "[t]he government may need time to collect witnesses . . . . We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Doggett*, 505 U.S. at 656. Ciccone argues that the witnesses here were not truly unavailable as contemplated by the Idaho appellate decisions of *Clark* and *Davis* and any unavailability therein was caused by the State's negligence. In *Clark*, the Idaho Supreme Court dealt with a speedy trial issue hinging on true unavailability or mere inconvenience. *See Clark*, 135 Idaho at 255, 16 P.3d at 931. There, the State requested a continuance to accommodate the complaining witness, French. *Id.* at 256, 16 P.3d at 932. The prosecutor informed the magistrate that French lived in Montana and was scheduled to take board exams on September 8. *Id.* The prosecutor also stated that French could not travel to Boise for a trial between September 20 and October 6, 1997, because of teaching obligations. *Id.* The Court concluded:

> But the record in this case indicates that French was neither "missing" in any sense of the word, nor was she actually "unavailable." There is an enormous difference between being inconvenienced and being unavailable. True unavailability suggests an unqualified inability to attend, while inconvenience merely implies that as in a case such as this, attendance at trial would be burdensome. Here, French could have attended the September 22 trial, and in fact was compelled to do so by the magistrate's previous order. The State, however, not wishing to have French travel from out of state only to face postponement of the trial, requested that Clark's trial either be given top priority on September 22 or moved to a date in which the trial would have first priority. But the desire to accommodate French's schedule cannot be said to comprise a reason that rises to the level of a legal excuse for the delay.

*Id.* at 260-61, 16 P.3d at 936-37.

Our review of the record in this instance leads us to conclude that the State demonstrated good cause for the delay--the unavailability of witnesses. The State filed the information charging Ciccone with two counts of first degree murder on January 27, 2004. Ciccone's trial was originally set to commence on July 20, 2004--seven days prior to the statutory deadline of I.C. § 19-3501. On July 16, 2004, the State filed a motion to continue the trial, asserting that six

7

of its witnesses were active duty military personnel assigned to TDY outside the state and were unavailable for trial. Of those six witnesses, three were in South Korea and another was in Texas preparing to be deployed to Iraq.

Ciccone argues that the State has not demonstrated that the witnesses were truly unavailable. A witness being unavailable for trial due to active military service is a good reason for delay. *See, e.g.*, *Bell v. State*, 651 S.E.2d 218, 219-20 (Ga. Ct. App. 2007) (reason for the delay was sufficient when witness was unavailable because she was on active duty as a member of the armed forces and was serving in Iraq); *People v. Chardon*, 922 N.Y.S.2d 127, 128-29 (N.Y. App. Div. 2011) (holding that a "subsequent period between June 8, 2005, and July 7, 2005, were attributable to exceptional circumstances and, therefore, excludable [ ], since the complainant was deployed for military service in Korea"); *Commonwealth v. Hyland*, 875 A.2d 1175, 1190-92 (Pa. Super. Ct. 2005) ("The Commonwealth cannot be held to be acting without due diligence when a witness becomes unavailable due to circumstances beyond its control. Certainly, [a witness's] deployment to the Middle East was a matter over which the Commonwealth had no control."); *Kelley v. Commonwealth*, 439 S.E.2d 616, 619 (Va. Ct. App. 1994) ("the Commonwealth was justified in requesting a continuance for the period in which [ ], their primary witness, was called to military duty in the Persian Gulf").

Ciccone also argues that the State negligently waited for the Air Force to conclude its investigation, which caused the subpoenas to be sent in June. The Air Force investigation contained a witness list that the State used to prepare for trial. All of the witnesses in the report were Air Force members. Although waiting for the conclusion of the investigation pushed the State to the discovery deadline, the list was given to defense counsel before the deadline date. The State waiting for the conclusion of the Air Force investigation was reasonable, given the unique circumstances of the military community and military procedures.

Although this Court concludes that the reason for the delay ultimately weighs in favor of finding that Ciccone's speedy trial rights were not violated, we further determine that it is sufficiently close to warrant a discussion of the other three *Barker* factors.

### 2. Length of delay

*Barker's* four-part speedy trial test creates no bright-line boundaries. Rather, the United States Supreme Court pointed out that because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is

8

necessarily dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S. at 530-31. The nature of the case is also of import in determining the period of delay that can be tolerated, for the period that is reasonable for prosecution of an ordinary street crime is considerably less than for a complex conspiracy charge. *Id.* at 531; *Lopez*, 144 Idaho at 353, 160 P.3d at 1288; *Davis*, 141 Idaho at 837, 118 P.3d at 169; *State v. McNew*, 131 Idaho 268, 272, 954 P.2d 686, 690 (Ct. App. 1998).

As Ciccone points out, when his trial began on January 4, 2005, it was nearly twelve months from when the information was filed. This delay is not as significant, given that the nature of the charges Ciccone was facing--two counts of first degree murder--can be fairly characterized as complex. *Compare Davis*, 141 Idaho at 837, 118 P.3d at 169 (concluding that a DUI charge arising out of a traffic stop could not be characterized as complex), and *State v. Moore*, 148 Idaho 887, 902, 231 P.3d 532, 547 (Ct. App. 2010) (same), with *Lopez*, 144 Idaho at 353, 160 P.3d at 1288 (concluding a seventeen-month delay was unreasonable because "the record on appeal shows no difficulty with complexity of investigation, lost witnesses, trouble marshalling evidence, or any other mitigating circumstance justifying the delay"). Here, the severe nature of the alleged offenses required more time than that of a non-complex case. In addition, witnesses were unavailable, the defense did not provide an expert's curriculum vitae until after the State requested a continuance, and the Air Force procedures and protocol provided complications that all added to the length of the delay.

### 3. Assertion of speedy trial rights

In the context of a constitutional speedy trial analysis, the defendant's assertion of his or her right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Barker*, 407 U.S. at 531-32. At the hearing on the State's continuance motion, Ciccone clearly asserted his speedy trial rights. Thus, we conclude that Ciccone asserted his speedy trial rights as soon as he knew he would not be brought to trial within six months, and his assertion weighs in favor of dismissal on speedy trial grounds.

### 4. Prejudice

The fourth factor in the *Barker* analysis is prejudice to the accused caused by the delay. Prejudice is to be assessed in light of the interests that the right to a speedy trial is designed to protect. *State v. Young*, 136 Idaho 113, 118, 29 P.3d 949, 954 (2001). Those interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused;

9

and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954; *Lopez*, 144 Idaho at 354-55, 160 P.3d at 1289-90. The third of these is the most significant because a hindrance to adequate preparation of the defense "skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *Lopez*, 144 Idaho at 355, 160 P.3d at 1290. *See also State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999).

Relevant to this inquiry, the district court stated:

> Finally, is there prejudice to the defendant? The court will note that yes there is in fact prejudice to the defendant any time, in the court's opinion, when there is a delay.
>
> However, given the facts of this case, the court does not believe that this is an unreasonable delay, nor does it present an unreasonable prejudice to the defendant and will note that the State has cooperated in the taking of depositions voluntarily where the defendant discovered that one of the witnesses was going to be on temporary duty, as well.
>
> So, is there prejudice? Yes, there is some prejudice. Is that prejudice unreasonable given the circumstances? No. The court finds that it is not.

As for the first two interests, it is unquestioned that Ciccone endured anxiety while he was facing charges from the State and remained incarcerated for the entirety of the time between his arrest and trial. As to the last interest, Ciccone asserts that the delay impaired his defense against the charges in this case. Ciccone specifically argues that one witness, Ms. Shaw, testified at trial that when Ciccone got out of his car and started talking on his cell phone, he said "I got the job done." When confronted with the fact that she had never revealed this information before, Shaw said that no one had ever asked her what Ciccone had said into his cell phone. However, Shaw had been asked that question before at Ciccone's preliminary hearing and had testified then to not being able to hear what Ciccone had said into his cell phone. Ciccone attributes that misstatement to the extended delay in bringing him to trial. Ciccone contends that one witness's memory "could have deteriorated so significantly by the time of Mr. Ciccone's trial, one must wonder how reliable any of the witness' (sic) trial testimony was so long after the fact."

Ciccone's prejudice argument concerning possible witness memory loss is unavailing. First, the witness that misstated her previous testimony was cross-examined and impeached by Ciccone's attorney. Furthermore, Ciccone's attorney made specific reference to the inconsistent statements during closing argument. The impeachment removed any prejudice Ciccone could have faced by the witness's inconsistent testimony. Second, Ciccone's argument is based solely

on speculation and does not demonstrate prejudice. *See Loud Hawk*, 474 U.S. at 315 (alleging only a "possibility of prejudice is not sufficient to support" a claim of a speedy trial violation). Thus, Ciccone has failed to demonstrate that the delay prejudiced his defense to the charges in any degree.

### 5.     Conclusion

Although the delay in this case went beyond the six-month statutory speedy trial date, the most important consideration is the reason for the delay and we conclude, from the record, the State demonstrated good cause in seeking a continuance. Likewise, the length of the delay was not significant in light of the charges Ciccone was facing--two counts of first degree murder--and the complexities of prosecuting an Air Force member in a military community. Further weighing against a speedy trial violation is that there is no perceptible prejudice from the delay apparent in the record. Accordingly, we conclude Ciccone has not shown a constitutional or statutory speedy trial violation.

### B.     Prosecutorial Misconduct

Ciccone argues that during rebuttal closing argument the prosecutor made three improper statements. The first statement Ciccone alleges was improper because it infringed on his right to silence under the United States and Idaho Constitutions. The second statement Ciccone now argues contributed to the general tone that he did not testify at trial. The third statement Ciccone alleges was an improper plea to the jury to convict him not on the evidence, but on sympathy for the victims. Each statement will be taken up in turn.

### 1.     Defendant's silence

Ciccone argues that the prosecutor referred to Ciccone's decision not to testify and the statement rose to the level of fundamental error because it resulted in him being denied due process of law and violated his right to remain silent under the United States Constitution and Idaho Constitution. During closing argument, the prosecutor stated "[t]here's only two people that know, and Kathleen Ciccone isn't here to tell us." Ciccone did not object to the statement at trial.

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine that applies where a defendant asserts that an error occurred at trial--which it explicitly stated included allegations of prosecutorial misconduct. The Court

11

summarized the standards applicable both when there was a contemporaneous objection and when there was not, the latter of which is applicable here:

> If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id.* at 228, 245 P.3d at 980. In regard to the harmless error analysis, a defendant bears the burden of proving there is a reasonable possibility that the error affected the outcome of the trial. *Id.* at 226, 245 P.3d at 978.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Ciccone claims that he has satisfied *Perry's* first prong because the prosecutor's statement violated his constitutional right to silence. According to Ciccone, the prosecutor's statement implied that Ciccone was invoking his right to silence because only he could have told the jury about his argument with the victim. The Idaho Supreme Court has stated that a prosecutor's comments "must be evaluated in light of defense conduct and in the context of the entire trial." *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009); *see also Darden v. Wainwright*, 477 U.S. 168, 179 (1986) (stating that when the State's closing follows the

defense's, "[t]he prosecutors' comments must be evaluated in light of the defense argument that preceded it"). Indeed, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

The relevant portion of the prosecutor's rebuttal argument is as follows:

> Let's talk about [defense counsel] talking about the scene on K & R Ranch Road. How this precious purse a woman would have carried, the bag of food she obviously had in her possession because *that's what Albert said*.
>
> So I guess she has got the purse in the car, the bag of food in the car, the medicine, the sweater tied around her and everything. And she decided to get out with all of that stuff on K & R Ranch Road . . . and decided to walk however many feet--let's just say--it is on the chart--walk up there with all the purse, sweatshirt tied around her waist, bottle of pills, and all the food bag, and had enough wherewithal to throw it all at him right- or left-handed. Maybe she sat the purse down to get the McDonalds bag or the Burger King to throw at him. Maybe she just left it there. I don't know. *There's only two people that know, and Kathleen Ciccone isn't here to tell us.*
>
> Did the defendant try and hide this evidence, as the defense has talked to Cathy Wolfe about? He knew she was going to find it. Well, he sure as heck didn't walk back towards the driveway after he had run down his wife. As a matter of fact, they found him about as far away as you could get in that time frame from the driveway.
>
> *Did he ever tell Cathy Wolfe*, "I didn't turn around here. You're wrong. I turned around at K & R Ranch Road. That's where we got to. That's where we stopped. That's where we had a fight. That's where I turned around"?
>
> He never once said, at least in my memory, that that's where he turned around. He bought on, "Oh, this is where I turned around. Why would I turn around here? It doesn't make sense. We just had a little tiff. We were just joking. She wanted to go see her friends. That was it."
>
> He didn't say, "Detective Wolfe, it has come back to me now. I turned around up here."
>
> As a matter of fact, he didn't even mention throwing the food or anything else until Cathy Wolfe said, "Look, we found all the food." Oh, well, excuse me. I had a bad day. Pardon me for my omission.

(Emphasis added.)

In this case, the prosecutor's statement did not infringe on Ciccone's right to silence. The statement was made in response to defense counsel's reference to Ciccone's interview with the police. At that interview, Ciccone discussed the purported evidence and claimed that he accidently hit his wife with the car. Rather than making the improper implication as Ciccone

13

alleges, the prosecutor merely explained Ciccone's prior statement to the police. This result is further evidenced by the prosecutor's remarks "that's what Albert said" and "[d]id he ever tell Cathy Wolfe." Considering the entirety of the argument, the prosecutor's statement was not improper and, therefore, did not rise to the level of fundamental error.

At oral argument, Ciccone's appellate counsel conceded that his second alleged error of prosecutorial misconduct could not be an independent claim of error because a defense objection was sustained and trial counsel failed to move for a mistrial. During rebuttal, the prosecutor also stated:

> There is no testimony that he was looking down at is [sic] watch, that the cigarette smoke had blown in his face, that he was changing the radio station, that a cassette dropped, a cigarette dropped in his pants, he had to try and put it out real quick. No testimony as to that. Absolutely none. He doesn't say anything about any--

In light of Ciccone's concession at oral argument, he now argues that although this statement is not an individual claim of error, it contributed to the "general tone" that Ciccone failed to testify.

When Ciccone's trial attorney objected to this statement, the district court sustained the objection and admonished the jury:

> Ladies and gentlemen of the jury, the jury will disregard any argument based upon what the defendant did not say. As stated earlier in instruction 55, a defendant in a criminal trial has a constitutional right not to be compelled to testify.
> The decision of whether to testify is left to the defendant acting with the advice and assistance of the defendant's lawyer. You must not draw any inference of guilt from the fact the defendant did not testify, nor should this fact be discussed by you or enter into your deliberations in any way.

We conclude that the prosecutor's statement did not contribute to any "general tone" that Ciccone did not testify. The second statement was objected to and the objection was sustained, stopping any further improper comments. Furthermore, a curative instruction was given to the jury to ensure that no weight was given to Ciccone invoking his right to silence. In light of our determination that the first alleged prosecutorial misconduct statement was a reference to a custodial interview, this second statement was not a part of a general tone created by the prosecutor to illustrate that Ciccone refused to testify at trial.

14

## 2.      Sympathy for the Victim

Ciccone also argues that the prosecutor engaged in misconduct when he allegedly asked the jury to convict Ciccone based on sympathy for the victim.  Ciccone did not object to the prosecutor's statement at trial.  As noted above, where prosecutorial misconduct was not objected to during trial, this Court may only reverse when that misconduct constitutes a fundamental error.  *Perry*, 150 Idaho at 227, 245 P.3d at 979.  Under *Perry's* first prong, an alleged error must violate one of the accused's unwaived constitutional rights.  *Id.* at 228, 245 P.3d at 980.  A defendant's right to a fair trial, under the Fourteenth Amendment of the United States Constitution, is violated where a prosecutor attempts to "secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence."  *Id.* at 227, 245 P.3d at 979.

Ciccone relies on the following rebuttal statement to support his argument:

> When you kill somebody, you take away everything they have and everything they ever will have.  Kathleen was twenty-two years old.  Her death is a tragedy.  Give her life meaning and give her death the sense of justice that it requires.  Hold the defendant accountable for the purposeful, willful, deliberate, premeditated actions that he took that night.

We are not persuaded that Ciccone has shown fundamental error in the prosecutor's arguments.  Even if we assume that the prosecutor's statement strayed into the realm of emotional appeal, it did not approach the level of egregiousness necessary to constitute fundamental error.  Prior to making the statement cited above, the prosecutor said, "[t]his case is about Kathleen Ciccone's death, not the mother's pains, not about Albert Ciccone's being in the hands of [defense counsel].  *It is about how and why she died*."  (Emphasis added.)  Moreover, after the statement Ciccone alleges is improper, the prosecutor clearly asks the jury to "[h]old the defendant accountable for the purposeful, willful, deliberate, premeditated actions that he took that night."  The prosecutor stated twice that Ciccone should be found guilty based on his criminal actions.  We conclude this statement does not rise to the level of prosecutorial misconduct and thus Ciccone has failed to demonstrate fundamental error.

Lastly, Ciccone in passing asserts that "[t]aken together, these instances of misconduct rendered it impossible for Mr. Ciccone to receive a truly fair trial."  Although not cited as such, Ciccone appears to argue that when taken together the three statements constitute cumulative

15

error. The cumulative error doctrine refers to an accumulation of irregularities, each by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). A necessary predicate to application of the cumulative error doctrine is a finding of more than one error. *Severson*, 147 Idaho at 723, 215 P.3d at 443; *State v. Hawkins*, 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct. App. 1998). Because this Court determined that there was no error, Ciccone has failed to show errors sufficient to invoke the doctrine of cumulative error.

## C. Excessive Sentence

Ciccone argues that the district court abused its discretion by imposing a determinate life sentence for first degree murder.[1] Specifically, Ciccone asserts that "while his actions are reprehensible and tragic (as any murder is), the murder in this case is devoid of aggravating circumstances and, therefore, is relatively non-egregious." Ciccone further contends that the district court did not properly consider other mitigating factors, including his: (1) mental health; (2) rehabilitation potential; (3) service in the Air Force; and (4) lack of prior felony convictions.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

---

[1] Ciccone does not challenge the sentence he received upon his conviction for second degree murder for the unborn fetus.

Imposing a life sentence requires a high degree of certainty that the defendant cannot be released safely back into society or that the nature of the offense requires the defendant to spend the rest of his or her life in prison. *State v. Stevens*, 146 Idaho 139, 149, 191 P.3d 217, 227 (2008). The Idaho Supreme Court recently addressed a sentencing court's ability to consider the nature of the offense when imposing a determinate life sentence in *State v. Windom*, 150 Idaho 873, 253 P.3d 310 (2011). There, the Idaho Supreme Court reiterated that a sentencing court may consider the heinous and cruel nature of the crime when determining whether a defendant should spend the rest of his or her life in prison. *Id*. at 876, 253 P.3d at 313. *See also State v. Cannady*, 137 Idaho 67, 73 44 P.3d 1122, 1128 (2002); *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997). The *Windom* Court went on to hold that the sentencing considerations of societal retribution and general deterrence are decided based upon the unique characteristics of the offense. *Windom*, 150 Idaho at 880, 884, 253 P.3d at 317, 321.

Regarding the calculated and callous method in which the victim was killed, the district court determined that Ciccone's crime of first degree murder mandated life in prison, stating:

> The report of the accident reconstruction specialist from the Idaho State Police, who reviewed the scene shortly after the events happened, was as follows: "Albert Ciccone drove his vehicle to the right side of the road in a straight-ahead motion. The speed of his vehicle would have been about fifty miles-per-hour when he struck Kathleen Ciccone, the pedestrian.
> "The lack of any action on the driver's part until he saw that he was going to hit the mailbox indicates that he had no reaction to the pedestrian that was walking on the right side of the road."
> "The marks at the scene indicate a deliberate running over of the pedestrian and then a reaction to attempt to miss the mailbox. The driver could not have seen the mailbox until his vehicle struck the pedestrian."

The district court also noted:

> There had been prior acts witnessed by others of verbal abuse; prior acts, the effects of which were seen by others, of battery by the defendant upon the decedent, Kathleen Ciccone. And perhaps most telling, although not revealed to the jury at the time of trial, a prior attempt to hit Kathleen Ciccone with a motor vehicle when she left the hospital on one occasion at the Air Force base when the defendant was angry with her.

Ciccone contends that his determinate life sentence cannot be reasonable "based on a finding that the murder in this case was particularly egregious. To do so would be to find that first degree murder, in and of itself, is so egregious that it demands the harshest possible sentence

short of death, but that clearly is not the case." We cannot agree with Ciccone that this was a relatively non-egregious murder. The district court had before it facts that proved Ciccone intentionally struck his wife with his car traveling at speeds of almost fifty miles per hour. Furthermore, Ciccone only applied his brakes to avoid hitting a mailbox, not in a reaction to striking his wife. Ciccone completed his atrocious act by callously walking away from his injured wife without providing aid or calling for help. Ciccone's argument that this was a relatively non-egregious murder is based entirely on his belief that the incident was a tragic accident. This belief was not supported by the jury finding him guilty of first degree murder, and thus was not a factor in sentencing.

Ciccone further argues that the district court did not properly consider other mitigating factors, including his mental health, potential for rehabilitation, service in the Air Force, and lack of prior felony convictions. As our Supreme Court stated in *Windom*:

> Sentencing is less a science than an art. Judges face a different uncertainty principle than physicists: they must make a factual finding of the probability of future criminal behavior based upon limited data. In so doing, they draw upon their accumulated experience. It is precisely because of the difficulty of fashioning an objectively appropriate sentence that this Court has adopted a deferential standard of review of sentencing decisions.
> . . . .
> Our standard of review does not require (nor indeed, does it permit) us to conduct our own evaluation of the weight to be given each of the sentencing considerations (societal protection, general and specific deterrence, defendant's prospects for rehabilitation and societal retribution) in order to determine whether we agree with the district court's conclusion.
> In short, our task is not to determine whether we agree with the sentence imposed; rather, our duty is to determine whether Windom has demonstrated that the district court's imposition of sentence constituted an abuse of discretion under the well-established standards of review governing such decisions.

*Id*. *See also State v. Thurlow*, 152 Idaho 256, 260, 269 P.3d 813, 817 (Ct. App. 2011).

In this case, the district court recognized its discretion in sentencing. The district court articulated the goals of sentencing. The district court also properly: (1) considered the egregious nature of the crime; (2) acknowledged Ciccone's mental health issues, his background and character, and lack of a criminal record; (3) applied the correct legal standard; and (4) arrived at the determinate life sentence through an exercise of reason. The district court even noted: "I must base my decision on the facts and the law and not upon the emotions or the pain of either party when I declare sentence." In essence, Ciccone requests that this Court reweigh the

18

evidence presented before the district court and arrive at a different conclusion. However, to do so would be contrary to our established standards of review. Thus, we hold Ciccone has not demonstrated that the district court abused its discretion in sentencing him to a determinate life sentence for first degree murder.

## III.

## CONCLUSION

For the reasons set forth above, we hold that the district court did not err in finding good cause existed for the State's delay in bringing Ciccone to trial. Thus, Ciccone has failed to show that his constitutional or statutory speedy trial rights were violated. Ciccone alleged two instances of prosecutorial misconduct and has failed to show that the unobjected-to errors rose to the level of fundamental error. Lastly, the district court did not abuse its discretion by imposing a life sentence for his conviction of first degree murder. Therefore, the judgment of conviction and sentence for one count of first degree murder and one count of second degree murder is affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**