**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51068**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 18, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| WILLIAM B. BROWN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Randall S. Grove, District Judge.

Order denying motion to dismiss and judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

William B. Brown appeals from his judgment of conviction for one count of lewd conduct with a child under the age of sixteen years and two counts of sexual abuse of a child under the age of sixteen years. Brown argues that the district court erred in denying his motion to dismiss based on an alleged violation of his speedy trial rights. The district court did not err in denying Brown's motion to dismiss because his speedy trial rights were not violated. Therefore, Brown's judgment of conviction is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2021, the State charged Brown with one count of lewd conduct with a child under the age of sixteen years, Idaho Code § 18-1508, and two counts of sexual abuse of a child under the age of sixteen years, I.C. § 18-1506(1)(b) (first case). On June 24, 2021, the State

1

dismissed the first case. The same day, the State refiled the same charges against Brown (second case) and Brown remained in custody. The district court scheduled a jury trial in the second case for October 5, 2021. Due to administrative orders related to the coronavirus (COVID-19) pandemic, Brown's jury trial was postponed to December 27, 2021. On December 7, 2021, the district court postponed Brown's jury trial because Brown's case had "low priority." Because of another administrative order related to the COVID-19 pandemic, Brown's jury trial was again rescheduled to March 21, 2022. On March 18, 2022, the State dismissed the second case and Brown was released from custody. On August 10, 2022, the State charged Brown with the same crimes as were charged in the first and second cases (third case). Brown remained out of custody. The district court scheduled a jury trial in the third case for January 3, 2023.

On December 21, 2022, the district court ordered a mediation pursuant to the parties' request. On January 26, 2023, Brown advised the district court that mediation was unsuccessful and requested a jury trial. The district court scheduled a jury trial for February 27, 2023. On February 22, 2023, the State filed a motion to continue the jury trial because one of its witnesses, a detective, would be out of the country. Brown objected to the motion and asserted his speedy trial rights. At a hearing on the motion, the district court granted the State's motion to continue, reserved its ruling on Brown's speedy trial argument, and rescheduled the trial for April 3, 2023. On March 10, 2023, Brown filed a motion to dismiss the third case arguing that his statutory and constitutional rights to a speedy trial had been violated. At a hearing on Brown's motion, the district court denied Brown's motion finding that, although the ten-month delay was sufficient to trigger the *Barker*[1] balancing test, it was not an unreasonable delay that violated Brown's constitutional speedy trial rights. The case proceeded to trial and the jury found Brown guilty on all counts. Brown appeals.

## II.

## STANDARD OF REVIEW

Whether there was an infringement of a defendant's right to speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.*

---

[1]     *Barker v. Wingo*, 407 U.S. 514 (1972).

2

## III.

## ANALYSIS

Brown argues that the district court erred by denying his motion to dismiss because the delay of his trial violated his constitutional rights to a speedy trial.[2] The State responds that the district court did not err because the district court properly applied and weighed the *Barker* factors in determining that Brown's constitutional speedy trial rights were not violated.

The Sixth Amendment to the Constitution of the United States guarantees to criminal defendants the right to a speedy trial. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001). This right is applicable to the states through the Fourteenth Amendment. *Id.* In addition, Article I, § 13 of the Constitution of the State of Idaho guarantees the accused in a criminal case the right to a speedy trial. *Id.* To determine whether a defendant's right to a speedy trial was violated under both the United States and Idaho Constitutions, appellate courts employ the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Avila*, 143 Idaho 849, 853, 153 P.3d 1195, 1199 (Ct. App. 2006). Under the *Barker* test, the court must weigh four factors to determine whether there has been a violation of the constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice caused by the delay. *State v. Brackett*, 160 Idaho 619, 625, 377 P.3d 1082, 1088 (Ct. App. 2016).

## A.    Length of Delay

"The first factor, the length of delay, is a triggering mechanism." *Young*, 136 Idaho at 117, 29 P.3d at 953. This factor serves a dual role in the analysis of the right to a speedy trial; it is a factor, but also serves as the triggering mechanism, for "[u]ntil there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the other three factors." *Id.* "Under the Sixth Amendment, the period of delay is measured from the date there is 'a formal indictment or

---

[2]     Brown raised his claim of speedy trial violation under the Fourteenth Amendment to the United States Constitution and Article 1, section 13 of the Idaho Constitution. Brown does not argue that his state constitutional claim should be analyzed any differently than his federal constitutional claim. Thus, we will apply the federal analysis for this case but recognize that, for purposes of the state constitutional analysis, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *See State v. Davis*, 141 Idaho 828, 836, 118 P.3d 160, 168 (Ct. App. 2005). Brown also raised a statutory speedy trial violation. The district court found there was no statutory speedy trial violation; Brown does not challenge that ruling on appeal.

information or else the actual restraints imposed by arrest and holding to answer to a criminal charge.'" *Id.* (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)). "Under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first." *Young*, 136 Idaho at 117, 29 P.3d at 953.

*Barker*'s four-part speedy trial test creates no bright line boundaries. Rather, the United States Supreme Court noted that because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S. at 530-31. The nature of the case is also important in determining the period of delay that can be tolerated, for example, the period that is reasonable for prosecution of an "ordinary street crime" is considerably less than for a complex criminal charge. *Id.* at 531; *State v. Lopez*, 144 Idaho 349, 353, 160 P.3d 1284, 1288 (Ct. App. 2007). The Idaho Supreme Court has held a delay of one year in a lewd conduct case, *State v. Folk*, 151 Idaho 327, 333, 256 P.3d 735, 741 (2011), and thirteen months in a complex drug trafficking case, *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996), were sufficient to trigger analysis.

The time between Brown's initial arrest on May 7, 2021, and the beginning of the jury trial on April 3, 2023, was approximately twenty-three months. To determine the length of delay, the district court subtracted the five months attributed to the period between when Brown's second case was dismissed, and the charges were refiled for the third case. On appeal, both parties agree that the district court accurately determined the total time of delay was eighteen months. Here, the State concedes that a delay of eighteen months is sufficient to trigger a full examination of the *Barker* factors. "Once the balancing test is triggered, the length of the delay also becomes a factor in the balancing itself." *Lopez*, 144 Idaho at 353, 160 P.3d at 1288. Factors to consider in this analysis include whether the case languished with inactivity, the complexity of the case, whether witnesses were lost, trouble marshaling evidence, and any other mitigating circumstances justifying the delay. *State v. Ciccone*, 154 Idaho 330, 339, 297 P.3d 1147, 1156 (Ct. App. 2012); *Lopez*, 144 Idaho at 353, 160 P.3d at 1288.

Brown argues that the length of delay factor weighs heavily in his favor because the delay was unreasonable considering the moderate complexity of the case and the State did not offer any mitigating circumstances that justified the delay. The State argues that the first factor only weighs

4

marginally in favor of Brown because the eighteen-month delay was only moderately longer than the time that is generally sufficient to trigger further analysis.

The district court found that the eighteen-month delay weighed in favor of dismissal. We agree with the district court that, while the first factor weighs in favor of dismissal, it does not favor Brown as strongly as Brown suggests. This case involved a serious crime, the victim was a young child, and the duration of the criminal acts spanned approximately three years. The State, however, failed to present any mitigating circumstances for its difficulty in assembling witnesses, which is factored in the analysis. *Lopez*, 144 Idaho at 353, 160 P.3d at 1288. Thus, the district court correctly concluded that the first factor weighs in favor of dismissal.

**B.    Reason for Delay**

"The second factor is the reason for the delay." *Young*, 136 Idaho at 117, 29 P.3d at 953. The United States Supreme Court has explained, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id*. In contrast, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Id*. However, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id*. Pretrial delay is often inevitable and wholly justified. *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005).

In this case, the district court found that although the length of delay totaled eighteen months, only ten of those months were attributable to the State for purposes of analyzing the second factor in the speedy trial analysis. Because neither party disputes this finding on appeal, the delay attributable to the State was ten months. The district court found that the ten-month delay weighed in favor of dismissal.

Brown argues the district court erred because it should have held that the second factor weighed strongly in favor of dismissal. Specifically, Brown asserts the district court erroneously held that one of the State's witnesses, Detective Cowdery, was unavailable, rather than inconvenienced, for trial. The State argues that the second factor should either be a neutral factor or weigh very slightly against the State because there was no evidence of intentional acts causing delay.

5

On February 22, 2023, the State filed a motion to continue the jury trial set for February 27, 2023. The motion indicated that "Detective Cowdery will be out of the country on a trip that was scheduled prior to the setting of this Jury Trial. Detective Cowdery cannot reschedule his trip." Brown objected to a continuance. The district court held a hearing on the motion, where, according to the court minutes, the State explained that Detective Cowdery was out of the country on a trip that was planned in October of 2021. The State explained that Detective Cowdery attempted to notify the prosecutor's office by email but accidentally sent his notice to an invalid email address, so the State was unaware Detective Cowdery was traveling internationally on the dates set for trial. The district court issued its oral ruling granting the State's motion to continue the jury trial and reserved its ruling on Brown's speedy trial argument until Brown's counsel had an opportunity to file a motion and have a hearing on that issue. Shortly thereafter, Brown filed a motion to dismiss based on a violation of his speedy trial rights, and the district court held a hearing on the motion. At the hearing, the State argued that Detective Cowdery was actually unavailable because at the time of trial, Detective Cowdery was out of the country and could not be served. The State also argued Detective Cowdery was actually unavailable, not merely inconvenienced, because he had booked the trip long before the trial was scheduled and would have had to forfeit all his non-refundable deposits. Because of the inadvertent use of the incorrect email address, the State was unaware of Detective Cowdery's scheduled trip and resulting absence until five days before trial.

The district court agreed with the State and issued its oral ruling on Detective Cowdery's availability:

> The Court is persuaded by case law and by argument of the parties that if this is a matter of inconvenience, then it's inappropriate, but the Court finds that under the particular circumstances of this case that requiring that this witness appear would have worked a real hardship. My understanding is based on the representation that this particular witness had paid for and booked a trip out of the country before this case was even set for trial. I understand that there was some difficulty in communication, but ultimately that was scheduled and paid for before this case was even set.
> I think we would reach a different result if after this witness has been subpoenaed he went ahead and scheduled this, but this was already scheduled. The Court finds it would be a hardship for this witness to forfeit the money already paid and, again, as the State has noted, really is unavailable for service now he's out of the country. So the Court does find good cause under the statute.

Thus, the district court ruled on two alternate bases regarding Detective Cowdery's availability: (1) Detective Cowdery was actually unavailable because he could not be served; and (2) Detective Cowdery's absence was more than an inconvenience; he was unavailable because requiring him to appear would have "worked a real hardship" on him. On appeal, Brown does not address the district court's ruling that Detective Cowdery was actually unavailable because he could not be served; thus, we must affirm the district court's decision on that basis. *State v. Goodwin*, 131 Idaho 364, 366-67, 956 P.2d 1311, 1313-14 (Ct. App. 1998).

However, even if we address Brown's argument regarding Detective Cowdery's unavailability, it fails. Brown argues the district court erred because, although it certainly would have been inconvenient and burdensome for Detective Cowdery to cancel his trip, his trip did not make him unavailable. Brown contends that the State's desire to accommodate a witness's schedule is insufficient to constitute a legal excuse for the delay. The Supreme Court has noted there is an "enormous difference" between being inconvenienced and being unavailable. *Clark*, 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169. True unavailability suggests an unqualified inability to attend, while inconvenience merely implies that attendance at trial would be burdensome. *Clark*, 135 Idaho at 260, 16 P.3d at 936; *Davis*, 141 Idaho at 837, 118 P.3d at 169. In *Clark*, the Idaho Supreme Court found that Clark's speedy trial rights were violated because one of the State's witnesses, French, did not qualify as an unavailable witness. *Clark*, 135 Idaho at 260, 16 P.3d at 936. French could have attended a September 22 trial, and in fact was compelled to do so by a magistrate's previous order. *Id*. The State, however, not wishing to have French travel from out of state only to face postponement of the trial, requested that Clark's trial either be given top priority on September 22 or moved to a date in which the trial would have first priority. *Id*. at 260-261, 16 P.3d at 936-937. The Court remanded the case, finding that "the desire to accommodate French's schedule cannot be said to comprise a reason that rises to the level of a legal excuse for the delay." *Id*. at 261, 16 P.3d at 937.

Brown argues that his situation is similar to that in *Clark* because Detective Cowdery's trip did not present an unqualified inability to attend the trial, so the State's desire to accommodate the detective's travel schedule should be weighed heavily against the State. We disagree. In this case, at the time of the motion hearing, Detective Cowdery was already traveling internationally, and no previous court order directed him to be available. Thus, unlike *Clark*, the State's motion to continue the trial was not made to accommodate Detective Cowdery's future schedule, nor was

7

Detective Cowdery's absence in violation of a court order. Further, the motion to continue was not a deliberate attempt to delay the trial to hamper the defense; according to the record, Detective Cowdery mistakenly used an incorrect email address to inform the State of his travel schedule. That is not to say the State's motion to continue the trial should not weigh against the State for speedy trial purposes; it simply does not weigh against the State as strongly as Brown suggests. As a result, we find that the second factor weighs in favor of Brown.

**C.      Assertion of Right**

"The third factor is the accused's assertion of his right to a speedy trial." *Young*, 136 Idaho at 117, 29 P.3d at 953. The defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether he is being deprived of the right. *Barker*, 407 U.S. at 531-32; *Davis*, 141 Idaho at 839, 118 P.3d at 171. The timing of a defendant's assertion of the right tends to disclose whether he actually desired a speedy trial. *Lopez*, 144 Idaho at 353, 160 P.3d at 1288. As such, a defendant's failure to assert the right will make it difficult for him to prove that he was denied a speedy trial. *Barker*, 407 U.S. at 532; *Davis*, 141 Idaho at 839, 118 P.3d at 171. Here, the State concedes that Brown asserted his speedy trial rights throughout the case. Thus, the third factor weighs in favor of Brown.

**D.      Prejudice**

The fourth factor in the *Barker* analysis is prejudice to the accused caused by the delay. *Young*, 136 Idaho at 118, 29 P.3d at 954. The nature and extent of prejudice arising out of a delay in bringing a criminal action to trial is the most important of the *Barker* factors. *State v. McNew*, 131 Idaho 268, 273, 954 P.2d 686, 691 (Ct. App. 1998). Prejudice is to be assessed in light of the interests of defendants that the right to a speedy trial is designed to: (1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954. Whether a delay hinders the ability of a defendant to adequately prepare his case is the most significant form of prejudice because it skews the fairness of the entire criminal justice system. *Barker*, 407 U.S. at 532; *see also Lopez*, 144 Idaho at 354-55, 160 P.3d at 1289-90; *State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999).

The district court held that the fourth factor slightly weighed in favor of Brown. On appeal, Brown argues the district court correctly determined this factor weighed in his favor because he experienced the first and second forms of prejudice as he was subject to ten months of pretrial

8

incarceration and suffered anxiety and concern during the eighteen months of delay. Brown, however, concedes he did not experience the third form of prejudice--that his defense was impaired. The State argues the district court erred in holding that the fourth factor weighed in favor of Brown because the record does not show that Brown was prejudiced by the delay of his trial in any meaningful way.

In this case, because Brown concedes that he did not experience the third form of prejudice, the fourth factor should be given very light weight, if any. *State v. Hernandez*, 163 Idaho 9, 16, 407 P.3d 596, 603 (Ct. App. 2017). For the remaining forms of prejudice, although Brown argues he was in custody for ten months and suffered anxiety and concern, Brown's arguments similarly lack connection to the delay to demonstrate in a meaningful way that he was prejudiced by the delay. *Ciccone*, 154 Idaho at 340, 297 P.3d at 1157. As a result, the fourth factor is neutral.

### E. Balancing

The four *Barker* factors must be weighed to determine whether there has been a violation of Brown's constitutional rights to a speedy trial. *Barker*, 407 U.S. at 533. None of the four *Barker* factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," but are instead, "related factors and must be considered together with such other circumstances as may be relevant." *Id*.

In this case, the district court denied Brown's motion to dismiss and held that "a delay of ten months is not an unreasonable delay, despite several *Barker* factors that weigh in favor of dismissal." We agree. For the first factor, although the overall length of the delay was eighteen months, only ten months of the delay was attributable to the State, which was not an unreasonable delay for a case that involved multiple felony charges, a very young witness, and criminal acts that spanned several years. *Brackett*, 160 Idaho at 628, 377 P.3d at 1091 (finding that a delay of between nine and ten months attributable to the state was not an unreasonable delay for a case involving sixteen felony charges). Further, while the length of delay weighs in favor of Brown, the district court properly concluded that the weight of this factor was minimal in light of the complexity of the case, the difficulties the State experienced in assembling witnesses, and the absence of any intentional action by the State to cause the delay. Regarding the second factor, although it weighs in favor of Brown, we are not persuaded that it weighs heavily in favor of Brown because Detective Cowdery was an unavailable, rather than an inconvenienced, witness for trial. The third factor weighs in favor of Brown because he timely asserted his speedy trial rights.

9

As to the most important factor, the fourth factor was neutral because Brown failed to demonstrate that his defense was prejudiced in any meaningful way. *McNew*, 131 Idaho at 273, 954 P.2d at 691. Thus, after balancing the four *Barker* factors, we cannot conclude the district court erred in finding Brown failed to demonstrate that his speedy trial rights were violated. As a result, the district court did not err in denying Brown's motion to dismiss.

## IV.

## CONCLUSION

Brown failed to establish that his constitutional speedy trial rights were violated by the delays in his proceedings. Therefore, the district court did not err in denying Brown's motion to dismiss and Brown's judgment of conviction is affirmed.

Chief Judge GRATTON and Judge Pro Tem MELANSON, **CONCUR**.